Smuih, J.
In this case the majority of the court is of the opinion that the award by the Board of Administration of the contract for paving with brick a part of East Court street in this city, was, under the facts disclosed in this case, in contravention of section 2803, Revised Statutes, and therefore was invalid. It is admitted that under the advertisement for bids, on the specifications made, or a part of a bid, each person proposing to do the work must accompany his proposal with five samples of the brick which he was to use in making such improvement. Quill, to whom the contract was afterwards awarded, did so, but when submitted to the test provided for in the specifications on which the bids were founded, the brick wholly failed to meet the requirements. As a consequence of this it is clear that he was not entitled to an award of the contract, and the Board of Administration would have been entitled to consider his bid as no bid at all, and if the next highest bid was in due form, and the samples furnished by him would meet the requirements, the Board would have been fully authorized to enter into a contract with him. Or, under the provisions of the proposals for bids, it might have rejected all the bids, and re-advertised if it deemed it proper to do so.
*505 But neither of those courses was adopted. What was done was this:. It was agreed between the board and Quill that if be would use another kind of brick than that which under his bid he was to use, viz., the Middleport Block, which would stand the test provided for, instead of the Reynolds Block, which would not, that he should have the contract at his bid. To this he agreed, and the contract was awarded to him. Thereupon the relator, Delaney, prosecuted his petition in mandamus alleging these facts, and that he was the next lowest bidder to Quill. That he had bid for said work in all respects in accordance with the specifications, and that he accompanied his bid with specimen bricks as required, which were in all respects in accordance with the specifications for the work, and claiming that when Quill’s bid was found not to be in conformity with the specifications, that he, as the next lowest bidder, whose bid conformed to the specifications, became in law entitled to the contract,' and the prayer of the petition was that the board be required to award it to him.
The answer of the Board admits the 'aking by the city of the necessary steps to improve this street, and the advertisement for bids. That bids were received aud opened August 7, 1895, and on that day referred to the engineer for computation and report. That afterwards the engineer reported that Quill was the lowest bidder for the work, and that the board awarded the contract to him.
It further admits, that the specifications provided that bidders should accompany their bids with sample bricks of the kind they proposed to use, and that they must comply with the test provided for, but it denies each and every other allegation of the petition.
On the issues raised the case was tried in the court of common pleas, and a peremptory writ awarded as prayed for. A motion for a new trial having been overruled by the court, a bill of exceptions was allowed, and the questions *506 raised by the petition in error is, whether this judgment is right.
The ground upon which a majority of the court think that the board was not warranted in awarding the conract to Quill is this: The statute requires competitive bidding in such cases, and the contract could legally be awarded only to the lowest bidder, whose bid is in accordance with the specifications. The express provisions in this case were, that the specimen brick furnished with the bid, must stand a certain test. In this case it is clear that those furnished by Quill did not do so. The board then was not authorized to contract with him on his bid. To do so would be to set at naught their own express stipulations, and be manifestly unjust to other bidders, if he was allowed to substitute another and even a better, for an inferior article, and would be opposed to public policy. In such cases, as before suggested, they had the option to accept the next lowest bid, if injaccordance with their requirements, or to reject all bids. And it is not within the power of the board, in our judgment, to make an agreement with such person that he will put in other materials than those he had bid for, even if they.were of better and costlier material than that bid to be furnished by him. The reason for this is that the contract so made is not awarded on the one bid of' the person- — -the contract would be partly on his original bid and partly on a new contract made between him and the board, and such procedure might be liable to very gross abuse. In this case there is not the slightest reason to suppose that the board acted from other than the purest motives and with the desire to have good work done at less cost than would be done by awarding the contract to the next lowest bidder, whose bid, however, on a contract of near $10,000.00 was only about $308.00 higher than that of Quill. But the mode of doing it, we think, was not legal, and should not receive the sanction of he court.
*507 Was tbe relator entitled to the contract? A majority of the court is also of the opinion that if it appeared that his bid was the next lowest, and in all respects^ complied with the requirements, and the brick furnished hy him as sample, did or would have stood the test, and he was diligent in asserting his claim, that under the circumstances disclosed he would have been entitled to the relief demanded. This issue, we think, is warranted by thej'decisions of the Supreme Court in Boren & Guckes v. Com’rs Darke Co., 21 Ohio St. 311; Beaver v.Blind Asylum, 19 Ohio St. 97, 108; American Clock Co. v. Com’rs of Licking Co., 31 Ohio St. 415; State ex rel. v. B'd of Education, 42 Ohio St. 374.
We are all of the opinion, however, that the evidence submitted does not bring the case within those principles. In the first place it is not shown to our satisfaction that the relator has been diligent in the assertion of his claim. This is requisite under the decision in 21 Ohio St. 311. The bids were opened August 7, 1895, and the contract entered into thereafter, but when, does not appear. The petition for mandamus was filed October 25, 1895. For all that appears in the case, the persons to whom the contract had been awarded had prepared the materials, and may even have completed the job, which was required to be done with'in ninety days from the letting of the contract.
But in the next place the evidence does not show that the bid of Delaney, even if it were the lowest, was such a bid as couM under the 'advertisement have been properly accepted by the Board of Administration. Hein effect alleges that iti'was, but the answer of the defendant denies, it, and proofjijwas necessary to show it.jp It was shown that Delaney d.idj,'file^with|his|bid samplefblocks as required. They appear to have been of the Middleport Block pattern. On the first of]|November, 1895, after the filing of the man *508 damus petition, Mr. Delaney submitted to Mr. Punshon, an engineer of this city, nine or ten samples- of Middleport Block, to be tested by him, to see if' they would stand a test similar to that prescribed by the advertisement for bids or the specifications, and he testified that they did. But the test was required to be made by the city engineer, and there is nothing to show that it was attempted to have this done; and still further, there is no proof tending to show that the bricks tested by Mr. Punshon, or any of’ them, were those filed with his bid. They may have been of a wholly different character, though it may be conceded that there is evidence tending to show that Middleport Blocks, as a rule, would stand the test. But to entitle a bidder claiming a contract under such circumstances, it must clearly appear that his bid was such as entitled him to the contract. See 21, Ohio St. 321, supra
Fred Hertenstein, Corporation counsel, for plaintiff in error.'
F. M. Coppock, for defendant in error.
The judgment of the court of common pleas awarding a peremptory writ is therefore reversed.